**J. H. PINGREE and J. N. Landeen, Trustees for Continental Casualty Company, Continental Casualty Company, Appellants,**

**Irving SULMEYER, Trustee, Appellee.**
**No. 18028.**

United States Court of Appeals
Ninth Circuit.
March 23, 1963.

**BARNES, Circuit Judge.**

This is an appeal from a district court approval on a review of a referee's order in bankruptcy proceedings, holding that the assignments made by the bankrupt to the appellants herein, as security for the payment of certain sums, were invalid as to creditors, and that said transfers should be set aside for the benefit of the estate.

Both the referee and the district court held that the assignments came within the provisions of California Civil Code, § 3017 et seq., and were invalid as to creditors because of non-compliance with said sections, i. e., lack of recordation. Appellants urge that the assignments did not come within Cal.Civ.Code, § 3017, but rather Cal.Civ.Code, § 955, which requires no recordation.

Appellants originally urged a second point, i. e., that the bankruptcy court had no summary jurisdiction to litigate the rights of appellants. This point was formally withdrawn and waived by appellants on oral argument.

We adopt the summary of facts alleged by appellee, assuming they reveal the evidence most favorable to the successful litgant below.[1]

Anderson, McPharlin & Conners, and George C. Montgomery, Los Angeles, Cal., for appellants.

Buchalter, Nemer, Fields & Savitch, and Norman E. Stevens, Los Angeles, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and PENCE, District Judge.

1. "The Bankrupt, San Fernando Valley Restaurant, Inc., was prior to bankruptcy, in the restaurant business. On September 9, 1958, it entered into an agreement with The Diners' Club, Inc. By the terms of this agreement when a customer presented a valid membership card to the Bankrupt, the customer could 'sign' the check and the Bankrupt was authorized to extend credit for the purchase by the customer. The Bankrupt could not bill the customer, but instead if the Bankrupt presented the charge slip to The Diners' Club in a certain manner, The Diners' Club would pay the Bankrupt for the customer's meal, less certain charges. It is the obligation of The Diners' Club to pay the Bankrupt, which is the subject matter of this proceeding.

Thereafter, and under date of July 23, 1959, the Bankrupt agreed to assign The Diners' Club charges to Atlas Insurance Agency as security for the Bankrupt's sale tax bond obligation to Atlas Insurance Agency; and that The Diners' Club would make all payments on said assigned charges to 'J. H. Pingree and/or J. N. Landeen as Trustees for Continental Casualty Co.' From time to time, thereafter the Bankrupt assigned monies due from The Diners' Club; and The Diners' Club in due course paid to Continental all monies due on said charges, with the exception of charges totalling $6,000.27. It is the monies due on these unpaid charges with which this litigation is concerned.

Subsequent to the filing of the petition in bankruptcy, Jack N. Landeen (one of the respondents) filed a proof of claim in the bankruptcy court for money owed by the bankrupt to Jack N. Landeen's insurance business, Atlas Insurance Agency.

At the present time The Diners' Club holds and has set aside in a separate 'hold' fund the sum of $7,599.94, of which the sum of $6,000.27 is the subject of this litigation. The Diners' Club makes no claim to this fund."

"Accounts," as defined by California Civil Code, § 3017(1), may not be validly assigned as against a creditor, unless that creditor has *actual* notice, or a *recorded* notice is filed "at the time of, or before, the execution of the assignment, or within five days thereafter." (Cal.Civ.Code, § 3018.)

It is stipulated no such notice was given, and that a creditor exists who is without actual notice.

Section 3017(1) provides:

" 'Account' means a debt, due or to become due, arising out of the sale, storage, transportation, care, repair, processing, manufacture or other improvement of tangible personal property, or arising out of a contract therefor, or arising out of the rendition of personal services which in the regular course of business will result in an open book account; * * *."

Section 3017(1) and section 955 are mutually exclusive by the precise terms of § 955.1.[2]

The sole point of controversy, then, is whether the transaction which here took place created an account within the description found in § 3017(1).

The trustee urges that the account was a debt arising out of the sale of food and drink. Appellants urge that the obligation of The Diners' Club to the bankrupt arose out of the express terms of a prior written contract created only when (a) the customer subsequently lawfully signed the tab at the restaurant, and (b) the charge was subsequently approved by The Diners' Club. Whose debt was this *after* the tab was signed by the customer, and *before* the approval by The Diners' Club? No one but the customer's!

It may be true that the *obligation* of The Diners' Club arose in the way described; and that there was a time lag between the signing of the tabs and The Diners' Club acceptance of the charges within thirty days after they were incurred. It may be that until The Diners' Club acted upon and accepted the charges transmitted by the bankrupt, no *obligation* was created in The Diners' Club in favor of the bankrupt. Yet in either case the obligation arose from a debt, created by the customer, which "became due" and "arose out of the sale" of tangible personal property.[3]

The charge slips may be merely evidences of the sale of food, but to permit them and not the account they create to be assigned without notice so as to defeat creditors would prostitute the purpose of California Civil Code, § 3017(1).

Let us suppose that "X" guaranteed that he would stand good for "Y's" charges at "Z" restaurant. "Y" dines regularly, and as soon as "X" verifies the authenticity of "Y's" signature on the tab, he pays. Suppose "X" agrees to pay some other of "Z's" creditors at "Z's" direction, instead of paying "Z" directly. Could "Z" then say the account was not with "Y"—that it was with "X"? It may be ultimately the *obligation* of "X," and "X" may ultimately *pay* it, but it is payment for a debt created by "Y" out of the sale of food. Nothing can be created by such an understanding unless and until "Y" buys food and creates a debt therefor. This constitutes an account

2. California Civil Code, Section 955.1 states:
  "Except as provided in Section 955, and subject to compliance with any applicable statute requiring recording or filing, the transfer of any right to payment, not constituting an account as defined in Section 3017 of this Code and not constituting a negotiable instrument, shall be deemed perfected as against third persons upon their being executed and delivered to the transferee an assignment thereof in writing; provided, however, that as between bona fide assignees of the same right for value without notice, the assignee first giving notice thereof to the obligor in writing shall have priority; but such assignment shall not be, of itself, notice to the obligor so as to invalidate any payments made by him to the transferor."

3. We do not reach the question of "rendition of personal services."

within the meaning of California Civil Code, § 3017.

Affirmed.